**FILED**
**JANUARY 24, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BUDDY Q, LLC, a Washington Limited Liability Company; and EVERGREEN FINANCIAL SERVICES, INC., A Washington Corporation, | ) ) ) ) | No. 38066-1-III Consolidated with: |
| Respondents, | ) ) | |
| v. | ) ) | |
| THE CITY OF YAKIMA, a Washington Municipal Corporation, | ) ) ) | |
| Appellants. | ) ) ) | |
| J&D VENTURES, LLC, a Washington Limited Liability Company, et al., | ) ) ) | No. 38079-3-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| THE CITY OF YAKIMA, a Washington Municipal Corporation, | ) ) ) | |
| Appellants. | ) | |

STAAB, J. — Buddy Q, LLC, J&D Ventures, LLC, and other landowners

(collectively referred to as Buddy Q) sued the City of Yakima (City) under a theory of

negligence for damages suffered after the City diverted floodwaters away from an

intersection and commercial buildings toward a lake system. When the lake system overflowed, the plaintiffs' properties were damaged. The City moved for summary judgment raising several theories of defense, including the public duty doctrine. The trial court denied the motion for summary judgment. This court granted the City's motion for discretionary review solely on the issue of whether the public duty doctrine applies.

The public duty doctrine applies when government obligations are imposed by statute and is used to guide courts in identifying the recipient of a duty. A statutory duty owed to the public generally is not a duty owed to any individual plaintiff unless one of the enumerated exceptions applies. In this case, the City points out that it had declared a public emergency and argues that it was diverting floodwaters pursuant to a general obligation imposed by the Washington Emergency Management Act (WEMA), chapter 38.52 RCW. While the WEMA authorizes the government to act quickly and avoid certain regulatory hurdles under the right circumstances, the City does not point to any specific mandate that requires it to perform flood mitigation. Since the City does not meet its burden of showing that its actions were required by a statutory duty owed to the public, the trial court did not err in denying the City's motion for summary judgment.

We remand without prejudice. If the City can demonstrate its actions were mandated by a statutory duty owed to the public, then the public duty doctrine applies unless the plaintiffs can establish an exception. On the other hand, if the City was

choosing to act, it had a common law duty to exercise reasonable care, and the public duty doctrine does not apply.

BACKGROUND

Because the case is before us on the City's motion for summary judgment, the following facts are set forth in a light most favorable to the nonmoving party, Buddy Q.

In mid-March 2017, rapid snowmelt resulted in historical surface water flooding in several locations throughout the city of Yakima, including the Cowiche Creek Basin. On March 15, the mayor of Yakima declared an emergency and invoked the powers authorized by the WEMA.

That same day, a private levee broke near Cowiche Creek and floodwater began flowing down 40th Avenue, reaching the high-traffic intersection of 40th Avenue and Fruitvale Boulevard. To mitigate the damage from the floodwater, City workers constructed a berm across the intersection to divert the water toward Myron Lake, part of a lake system designed with flood gates that empty into the Yakima River. The gates did not open and the lake system overflowed, damaging several adjacent properties.

Buddy Q and numerous plaintiffs sued the City for negligence. The plaintiffs alleged that damage to their properties were proximately caused by the City's negligent act of diverting surface water to the lake system adjacent to their properties. The City denied liability and raised various defenses.

3

The parties filed competing motions for summary judgment. The City argued it was immune from liability under the flood control immunity statute, as well as the emergency and public duty doctrines. In the alternative, the City argued that the plaintiffs had failed to present evidence of causation. The trial court denied both motions, and the City sought discretionary review. We granted review solely on the issue of whether the public duty doctrine applies to preclude liability.

ANALYSIS

The sole issue presented in this interlocutory appeal is whether the trial court erred in denying the City's motion for summary judgment and declining to apply the public duty doctrine to the City's act of diverting floodwaters from a busy intersection into a nearby lake system.

Orders on summary judgment are reviewed de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Evidence is considered in a light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if there are no genuine issues of "material fact and the moving party is entitled to judgment as a matter of law." *Id.*

A threshold issue in any negligence claim is whether the defendant owed a duty of care to the plaintiff. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784-85, 30 P.3d 1261 (2001). The question raised in this appeal is not whether the City owed a duty but to whom it was owed.

4

In 1967, the legislature passed a statute waiving Washington's sovereign immunity to tort suits. RCW 4.96.010. The statute provides that "[a]ll local governmental entities . . . shall be liable for damages arising out of their tortious conduct. . . to the same extent as if they were a private person or corporation." RCW 4.96.010(1). Thus, the general rule is that a municipality is liable for negligence to the same extent as a private person.

This general rule becomes problematic when duties are imposed on the government by statute, ordinance, or regulation that would not ordinarily be imposed on a private person. *See Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 886-87, 288 P.3d 328 (2012) (Chambers, J., concurring). Because private citizens do not "issue permits, inspect buildings, or maintain the peace and dignity of the state of Washington," when these duties are mandated by statute, it creates an additional burden on the government that would not be imposed on a private person. *Id*. at 887.

Recognizing that government entities should not be held liable under duties that would not apply to private citizens, courts developed the public duty doctrine. The doctrine concentrates on the first element of negligence: a defendant's duty owed to a particular plaintiff. It is often referred to as a focusing tool: used by courts to distinguish between a duty owed to the general public or a duty owed to a particular individual or class of individuals. *Mancini v. City of Tacoma*, 196 Wn.2d 864, 885, 479 P.3d 656 (2021). "When laws 'impose[ ] duties on governments not imposed upon private persons

5

or corporations,' courts must determine whether governments owe those duties to an individual or the public as a whole." *Ehrhart v. King County*, 195 Wn.2d 388, 399, 460 P.3d 612 (2020) (quoting *Munich*, 175 Wn.2d at 887 (Chambers, J., concurring)). The distinction is necessary because a duty owed to the public at large is a duty owed to no individual person. *Munich*, 175 Wn.2d at 878. Thus, when a plaintiff alleges that the government violated a public duty, the plaintiff fails to establish negligence as a matter of law. *Bailey v. Town of Forks*, 108 Wn.2d 262, 266, 737 P.2d 1257 (1987) ("By requiring that a duty toward the particular plaintiff be established, these basic tort principles serve the same end as the public duty doctrine.").

Even when a duty is imposed by statute, ordinance, or regulation, the public duty doctrine will not apply if the plaintiff can demonstrate that one of the four exceptions to the public duty doctrine applies.[1] *Ehrhart*, 195 Wn.2d at 400. Nor does the public duty doctrine apply if the plaintiff can demonstrate that the government was engaged in a proprietary function when it negligently caused the injury. *Bailey*, 108 Wn.2d at 268. Whereas government functions are performed for the common good, proprietary functions benefit a particular person or corporate entity. *Schulz v. State*, 12 Wn. App. 2d

---

[1] The parties do not contend that the exceptions apply in this case, but they include "'(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship.'" *Ehrhart*, 195 Wn.2d at 400 (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 549 n.7, 442 P.3d 608 (2019)).

729, 742, 459 P.3d 1090 (2020). Regardless of whether the court is considering the public duty doctrine generally, one of the exceptions to the rule, or the nature of the function, "the fundamental question remains the same: Does the government owe a duty to the plaintiff individually or merely to the public as a whole?" *Ehrhart*, 195 Wn.2d at 400.

The parties in this case misconstrue the public duty doctrine. The City argues that the public duty doctrine provides a complete defense because none of the exceptions apply, and the City was acting to promote public safety when it took steps to divert the floodwaters. Br. of Appellant at 28. However, as Justice Chambers noted, the public duty doctrine does not require one of the four exceptions to apply in order for a duty to arise. *Munich*, 175 Wn.2d at 886 (Chambers, J., concurring). Instead, it is a tool of statutory interpretation to determine whether the legislature intended a duty imposed by a statute to be owed to the general public or a particular individual. *Id.* at 888.

The plaintiffs on the other hand, do not assert one of the exceptions to the public duty doctrine, but they do contend that the doctrine does not apply because the City was performing a proprietary function when it diverted the water from an intersection. Br. of Resp't at 11-13. However, Buddy Q's definition of a proprietary function is overly broad and includes any function other than passing laws or conducting inspections. Br. of Resp't at 18. Contrary to Buddy Q's characterization, "[t]he principal test in distinguishing governmental functions from proprietary functions is whether the act

performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." *Schulz*, 12 Wn. App. 2d at 742 (internal quotation marks omitted). Here, Buddy Q does not demonstrate that in diverting the floodwaters, the City acted for the special benefit or profit of a person or corporation.

The parties' confusion is not surprising. As Justice Chambers noted in his frequently-cited concurrence, "there is great confusion about what our public duty doctrine jurisprudence means." *Munich*, 175 Wn.2d at 885-86 (Chambers, J., concurring); *see also Ehrhart*, 195 Wn.2d at 397 (acknowledging that Supreme Court jurisprudence on the doctrine has not been a model of clarity).

Notwithstanding this confusion, the Supreme Court has recently reaffirmed that the doctrine "applies only to claims based on an alleged breach of 'special governmental obligations [that] are imposed by statute or ordinance.'" *Norg. v. City of Seattle*, No. 100100-2, slip op. at \*4 (Wash. Jan. 12, 2023) https://www.courts.wa.gov /opinions/pdf/1001002.pdf (quoting *Beltran-Serrano*, 193 Wn.2d at 549) (citing *Munich*, 175 Wn.2d at 886) (Chambers, J., concurring). While some courts have failed to clearly distinguish between common law and statutory duties when applying the public duty doctrine, the Supreme Court has "never held that a government did not have a common law duty solely because of the public duty doctrine." *Munich*, 175 Wn.2d at 886-87. In other words, the public duty doctrine does not apply to protect the governmental entities from liability where they would normally be liable at common law. *See Beltran-Serrano*,

193 Wn.2d at 549-51. Instead, "the only governmental duties we have limited by application of the public duty doctrine are duties imposed by a statute, ordinance, or regulation." *Munich*, 175 Wn.2d at 886 (citing 27 cases in support of this conclusion).

The City contends that it had declared a public emergency and was acting pursuant to a statutory obligation imposed by the WEMA, and specifically RCW 38.52.020 and .070. Wash. Court of Appeals oral argument, *Buddy Q, LLC v. City of Yakima*, No. 38066-1-III (Oct. 27, 2022), at 6 min., 45 sec. to 8 min., 45 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Nevertheless, when pressed, the City did not identify any specific statutory directive that required it to act. Summary judgment cannot be decided on the public duty doctrine unless the City can demonstrate that its allegedly negligent actions were statutorily required.

Despite our decision to affirm the trial court's denial of the City's motion, we recognize that the WEMA does provide certain directives to state and local governments. For instance, each political subdivision of the state is authorized and directed to establish or join a local organization for emergency management. RCW 38.52.070(1). These local organizations are required to create and implement a plan and program for emergency management. RCW 38.52.070(3)(b). Moreover, under RCW 38.52.070(2), when a disaster occurs, the political subdivisions are authorized to provide emergency assistance and exercise the powers vested by the statute. But from our cursory review, it does not appear that the statute requires any certain action. The WEMA also provides for certain

9

immunities, which neither party has argued in this case, and procedures for filing claims for damages resulting from emergency management functions. *See* RCW 38.52.180.

We also recognize that when the WEMA and similar statutes do impose statutory duties upon government entities, courts have found that the public duty doctrine applies. For instance, in *Ehrhart*, the plaintiffs alleged that the county had a regulatory duty to determine appropriate action when it received notice of a nonlethal hantavirus case. 195 Wn.2d at 397. The applicable regulation required the county to issue a health advisory to warn residents of the danger. *Id.* The court found that the duty imposed by WAC 246-101-505 was a duty owed to the public at large. *Id.* Because no other exception to the public duty applied, the county did not owe a duty to this particular plaintiff. *Id.*

On the other hand, just because a government entity responds to an emergency does not mean they have a duty to do so. In *Norg v. City of Seattle*, the plaintiffs claimed that the city breached its common law duty to use reasonable care in responding to their 911 call for medical assistance. *Id.* at *6. The Court distinguished its prior holding in *Cummins v. Lewis County*, 156 Wn.2d 844, 851-52, 133 P.3d 458 (2006), where the parties assumed the public duty doctrine applied and the issue was whether the "special relationship" exception was established under the circumstances. *Id.* at *5. Unlike *Cummins*, which addressed duties that arise by statute, "'[a]t common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others.'" *Id.* at *6 (quoting *Beltran-Serrano*, 193 Wn.2d at 550). When

10

a party volunteers to aid another, a common law duty arises requiring the party providing aid to use reasonable care. *Id.*

Moreover, this common law duty is in addition to any statutory duty to provide services and "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Beltran-Serrano*, 193 Wn.2d at 550. While the city's statutory duties to provide service may be nonactionable, if the harm is caused by the direct contact with the plaintiff, as opposed to the breach of a generalized public duty, the city can be held liable. *Id*. at 552.

In this case, the City claims its actions were mandated by statute, but Buddy Q claims the City had a common law duty to exercise reasonable care in diverting the water. Buddy Q points to several cases that have found a common law duty to use reasonable care when a government agency or individual alters the flow of surface waters, causing damage to another's property. *See DiBlasi v. City of Seattle*, 136 Wn.2d 865, 969 P.2d 10 (1998); *Borden v. City of Olympia*, 113 Wn. App. 359, 53 P.3d 1020 (2002). While these cases recognize a general duty to use care when altering surface water flow, they do not address whether there is a statutory duty to act in the face of emergency flooding.

In this case, if the City was diverting floodwaters according to a duty imposed by the WEMA, then it would be necessary to determine if that duty to act was a general duty owed to the public or a specific duty intended to protect an individual or class of individuals. Even then, if it was a public duty, the City would still be liable if one of the

11

four exceptions applied or if the damage resulted from affirmative acts of misfeasance. If the City was not required to act but instead chose to act, it had a common law duty to exercise reasonable care in doing so, and the public duty doctrine would not apply.

We affirm the trial court's denial of the City's motion for summary judgment because the City has not established that it was acting under a statutory duty owed to the general public when it diverted floodwaters to a lake system and allegedly damaged the plaintiffs' property. We remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, J.

_____
Siddoway, C.J.